HEIRS OF PETRONILA MELÉNDEZ COTIS, Plaintiffs and Appellees, *v.* JUAN ANTONIO ALMODOVAR HORRACH, Defendant and Appellant.

No. 9944.   Argued November 7, 1949.—Decided November 17, 1949.

---

[2] Act No. 87 was amended by Act No. 4, Laws of Puerto Rico, 1939, but the amendment was on a point not material here.

*Eusebio López Acosta* and *Gilberto López de Victoria* for appellant. *Enrique Báez García* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The heirs of Petronila Meléndez Cotis, composed of her sons Francisco and Juan Jorge Meléndez, brought in the District Court of Mayagüez an action of revendication, together with a claim for civil fruits against Antonio Almodóvar Horrach. It was alleged therein in substance that the heirs are natural children of Petronila Meléndez Cotis, who died intestate on August 5, 1929; that their predecessor in interest was owner of a parcel of land having an area of 5.50 acres (*cuerdas*) which she acquired by purchase from Ramón Almodóvar 33 years ago, it being described; that said property has been grouped with others by the defendant, to form a property of 17 acres; that in spite of their being the owners of said property of 5.50 acres, the defendant Juan Antonio Almodóvar has had the actual possession thereof

since the death of their predecessor in interest without any title, in bad faith, and against the manifest will of the plaintiffs. As a second cause of action they claim fruits in the amount of $4,676.

To the foregoing complaint the defendant filed demurrers [1] for lack of facts and prescription. He also answered denying the essential averments of the complaint, among them the one that the property in question was acquired by Petronila Meléndez by purchase from Ramón Almodóvar, although admitting that the truth was that said property had been donated to the latter by Francisco Poueymirou.

The issue having been thus joined, the case went to trial. The evidence for the plaintiff tended to show that they are natural children of Petronila Meléndez Cotis and that on or about the year 1903 the latter acquired by purchase from Ramón Almodóvar the property of 5.50 acres, it being identified; that several years later and verbally the property was transferred by their mother to defendant Juan Antonio Almodóvar in order that the latter should work it as a sharecropper; that on several occasions they saw Almodóvar delivering to Petronila part of the proceeds obtained; that their predecessor died on August 5, 1929, in a house located within the said property; that at that time Almodóvar continued to work the farm by halves (*a medias*); that Leonides Meléndez, their foster sister, is still living in the house in which Petronila died and that the property in question was never sold by their mother or by any of them to the defendant, who possesses it without any title and against their will.

That for the defendant was to the effect that he acquired the property of 5.50 acres in question by private document from Petronila Meléndez, plaintiff's predecessor in interest, more than 40 years ago; that subsequently, he grouped it

---

[1] Demurrers have been abolished. Rule 7(c) of the Rules of Civil Procedure.

with other properties owned by him, filing on December 1913 a dominion title proceeding which after it was approved by the Municipal Court of San Germán was recorded in the registry of property on January 17, 1914; that four days later, the defendant sold that property to María Inés Almodóvar Horrach, his sister, who did not record the deed of purchase until three years later and who possessed the property until 1930, when the defendant reacquired it from her by purchase; that shortly thereafter he filed a contradictory dominion proceeding in his name, the latter being approved by the lower court and recorded in the registry of property on October 21, 1930; that since he acquired the property from Petronila Meléndez he and his sister have uninterruptedly held it as owners and have been in possession thereof until the time of the trial and that he never worked the said property as sharecropper.

The lower court rendered judgment holding, among other things, that the plaintiffs are the sole and legitimate owners of the property, the object of the suit; ordering the defendant to return the same to them and adjudging him to pay to the plaintiffs the sum of $1,692.50 as fruits, plus costs, and $300 as attorney's fees. Feeling aggrieved by that judgment, the defendant has appealed. He contends in support of his appeal that (1) the lower court erred in holding that the plaintiffs, in their capacity as sole and universal heirs of Petronila Meléndez Cotis, are the sole and legitimate owners of the parcel of land of 5.50 acres, the object of the revendication, without taking into consideration the defenses raised by the defendant, of lack of a cause of action and prescription; (2) in not considering the documentary evidence duly recorded and especially the possessory title recorded in the registry of property since January 17, 1914; and (3) in calculating the fruits yielded by the revendicated property in the sum of $1,692.50, without any specific basis for the calculation.

■■ Undoubtedly, the plaintiffs in their capacity as natural children of Petronila Meléndez were fully authorized to bring the action of revendication without the necessity of previously prosecuting a declaration of heirship in which they would be declared sole and universal heirs of their predecessor in interest. They could prove their status as heirs by oral evidence during the course of the trial. *Heirs of Torres* v. *Torres et al.*, 29 P.R.R. 847; *Heirs of Rodríguez* v. *Pérez*, 25 P.R.R. 73.

Now then, in revendicatory actions such as the one under consideration, for the plaintiffs to be successful they should do so based on the probatory strength of their title and not on the weakness of that of defendant. *Sosa* v. *Fidalgo*, 56 P.R.R. 48; *Santos* v. *Rodríguez*, 56 P.R.R. 247; *Pérez* v. *Rubert Hnos. Inc.*, 56 P.R.R. 608; *Gerardino* v. *People*, 55 P.R.R. 862; *People* v. *Rojas*, 53 P.R.R. 115; *Carreras* v. *Brunet*, 47 P.R.R. 419; *Elzaburu* v. *Chaves et al.*, 19 P.R.R. 162. They should also identify in due form the property the object of the proceeding. Were the plaintiff heirs successful in all this? Let us see:

■ The record shows that the defendant Juan Antonio Almodóvar instituted in the Municipal Court of San Germán a possessory title proceeding in his name in connection with a 17-acre property of which the parcel of 5.50 acres involved herein formed part; that said proceeding was approved by the Municipal Court on December 26, 1913 and that a certified copy of the order approving the same was recorded, as we have already stated, in the Registry of Property of San Germán, on January 17, 1914. We shall state, however that by express provision of the Act the proceeding thus prosecuted had necessarily to be recorded *without prejudice to third persons*. Section 392 of the Mortgage Law. For that purpose the owner of the property is not considered as a third person. The Mortgage Law provides, however, that "A record of possession shall not prejudice a person who

may have a better right to the real property, even though his title shall not have been recorded, unless the recorded right shall have been validated and secured by prescription," (§ 394) and that "With regard to the legal owner of the real property or interest which is in process of prescribing, the title shall be determined and the time computed in accordance with the provisions of the common law." (Section 35). See also *Martínez* v. *Municipality*, 64 P.R.R. 153, 163; *Polo et al.* v. *Fernández et al.*, 27 P.R.R. 893, 898; *Colón* v. *Rosario et al.*, 16 P.R.R. 736, 741; as well as Morell, *Legislación Hipotecaria*, vols. 5 and 2, pp. 488 *et seq.* and 653 *et seq.*, respectively; and Barrachina, *Derecho Hipotecario y Notarial*, vol. 4, p. 327. Therefore, the prosecution and record of the possessory title proceeding could affect in no way the ownership rights of the plaintiffs herein, unless prescription had validated and secured the recorded right. Indeed, a possessory title proceeding only tends to show the official fact of possession but never the right to such possession. *Roble* v. *Pellot*, 44 P.R.R. 46; *Estate of Maisonave* v. *Maisonave et al.*, 13 P.R.R. 254, 258; *Criado* v. *Battistini*, 3 P.R.R. 186, 194. Hence, there was nothing which prevented the bringing of a revendicatory action tending to destroy such possession, in spite of the fact that the possession had been recorded. In view thereof the lower court, in spite of considering the existence of the record of the possessory title in favor of the defendant, was entitled to conclude that it was not true that the defendant had been in possession of the property as owner from 1913—the date in which the possessory title proceeding was prosecuted—to 1929 when plaintiffs' mother died.

As regards possession prior to 1914, the trial court was also entitled not to believe defendant's evidence to the effect that by private document he had purchased from Petronila Meléndez the property of 5.50 acres, not only because said document was never presented in spite of the promises which in that connection the defendant made, but because it con-

sidered more worthy of credit the evidence for the plaintiffs, tending to show that the defendant had been a sharecropper of their mother and that the latter was the true owner of the property.

With regard to the dominion title proceeding the lower court was also correct in its conclusion. The record of such proceeding is not an obstacle for anyone who considers himself owner of the property, the object of the same, to bring a revendicatory action. In the first place, since the possession of the property had been recorded in 1914 it was unnecessary to resort to, the supplemental remedy of the dominion title proceeding. *Collazo* v. *People*, 46 P.R.R. 159, 165; *Bermúdez* v. *Morales*, 42 P.R.R. 411, 414. And as the defendant subsequently reacquired the property from the person who appeared in the registry with a right thereto, it would have been easy for him to obtain the record of the deed of sale. Under the circumstances the proper thing to do would have been to record the deed of purchase of the defendant and that said defendant request the conversion of the record of possession into a record of ownership pursuant to the provisions of § 441 of the Regulations for the Execution of the Mortgage Law, as amended by Act No. 21 of July 7, 1923 (Sess. Laws, p. 217). The record is silent as to the reason why the easier, more economic, and more speedy procedure of conversion was not followed. In the second place, it is very significant that in its great majority the names of the persons from whom the defendant acquired the 17 acres—of which as stated above the 5.50 acres in controversy herein form part—as mentioned in the possessory title proceeding, do not coincide with those from whom the defendant acquired the different parcels according to the dominion title proceeding. For example, in the dominion title proceeding prosecuted in 1913 it is stated that the 5.50 acres were purchased from Petronila Meléndez while in the possessory title proceeding the same parcel is described as hav-

ing an area of 5.75 and it is stated that it was acquired from Francisco Poueymirou. In connection with other parcels which also form part of the property of 17 acres whose ownership is sought to be recorded, the discrepancy among the names of the persons from whom the same were acquired is absolutely evident. Although in possessory title proceedings the summoning of the prior owners is not necessary and it suffices that the adjoining landowners be summoned, in dominion title proceedings the summoning of the prior owners is indispensable. If according to the possessory title proceeding and according to what the defendant himself testified at the trial, the 5.50 acres were acquired by him from Petronila Meléndez and not from Francisco Poueymirou, the fact that in the dominion title proceeding it was stated that said property had been purchased from Poueymirou and not from Meléndez is not only a suspicious but a gross error, that carries with it the nullity of said proceeding, since the successors in interest of Petronila Meléndez herein were never summoned or heard in the dominion title proceeding. *Rivero et al.* v. *Hernández et al.*, 18 P.R.R. 1001; *Monge et al.* v. *Zechini et al.*, 17 P.R.R. 729. On the other hand, the provisions of the Mortgage Law concerning dominion title proceedings should be strictly complied with and a deviation from such procedure especially when the same is of the magnitude as that involved in the proceeding filed by the defendant produces its nullity. *Febre* v. *Febre* 40 P.R.R. 208; *Colón et al.* v. *Registrar*, 23 P.R.R. 701; *Ex parte Perrier and Del Rosario*, 20 P.R.R. 119.

It is also suspicious that the defendant instead of recording the deed of purchase and of resorting to the conversion proceeding availed himself of what was characterized as a contradictory dominion proceeding, inasmuch as since he purchased from his sister María Inés and the latter in turn purchased from him, when she was summoned in said proceeding, in her capacity as former owner, he did nothing

more in the long run than to summon himself and disregard the true prior owners.

Finally we state that it is unquestionable that in the complaint, as well as in the evidence introduced by the parties, both the property of 5.50 acres, and that of 17 acres of which it formed part, were identified in an authentic manner thus expressly complying with the provisions of § 125 of the Code of Civil Procedure. See *Serrano* v. *Succession of Santós*, 24 P.R.R. 163; *Morales et al.* v. *Landráu et al.*, 15 P.R.R. 761.

Taking into consideration the reasons above set forth, the lower court was justified in concluding that the plaintiffs had shown a superior title to that of the defendant not only because in its judgment their evidence was more worthy of credit, but also because the oral evidence for the defendant was not believed by it and because the documentary evidence of the latter was fatally defective and could not have the scope claimed by the defendant.

Although the lower court failed to specifically decide the demurrers set up by the defendant, in rendering the judgment it did, it impliedly overruled them. In so doing it acted correctly, since it was clear that the complaint stated sufficient facts and that from its face it was not shown that the action had prescribed. Sections 1857 and 1859 of the Civil Code, 1930 ed. Moreover, any defects which the complaint might have in this respect were cured by the evidence. Rule 15(*b*).

Due to the foregoing considerations the first two errors have not been committed.

Concerning the fruits, the evidence only tended to show that the property of 5.50 acres was at all times planted with sugar cane, tobacco, and truck gardening, as well as that according to one of the plaintiffs the same yielded from 18 to 20 tons and according to the defendant from 8 to 10 tons of cane per acre. There was no evidence, however, regarding how

many acres were planted with sugar cane, as to those planted with tobacco, or as to those which were planted with truck gardening. There was no evidence either as to the expenses annually incurred in the planting and cultivation of all these products or as to the net proceeds obtained. Under those circumstances the lower court erred in holding that there was evidence that "those lands yielded an average of 45 tons of cane per year, that is, a total production of 675 tons of cane yielded in the 15 years," and that "*considering that each ton of cane produces a net income of $2.50*, the 675 tons of cane produced the sum of $1,692.50, with which sum the defendant enriched himself to the prejudice of the plaintiffs." (Italics ours.)  *Arvelo et al.* v. *Banco Territorial y Agrícola*, 29 P.R.R. 996.  Cf. *Capó* v. *Hartman & Co.*, 57 P.R.R. 190; *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688, 703; *Morales et al.*, v. *Landráu, supra.* It was incumbent on the plaintiffs to introduce clear and convincing evidence on this point and to place the court in a position to duly determine their rights. In this they were not successful. Although the action of revendication and to recover civil fruits may be joined, the fact that the first can prosper does not necessarily mean that the second must also prosper, especially in the absence of evidence to support the latter.

The judgment appealed from will be modified eliminating therefrom the pronouncement in connection with the granting of fruits and as modified affirmed.